MICHIGAN FEMALE SEMINARY *v.* SECRETARY OF STATE.

CORPORATIONS—FRANCHISE FEE—EDUCATIONAL INSTITUTIONS.
  A corporation organized for educational purposes solely, and
    not for profit, which issues no stock, but acquires its prop
    erty by voluntary contributions, is not within Act No. 182,
    Pub. Acts 1891, as amended by Act No. 79, Pub. Acts 1893,
    requiring the payment of a franchise fee by corporations.

*Mandamus* by the Michigan Female Seminary to com-
pel Washington Gardner, Secretary of State, to file and
record relator's articles of reincorporation. Submitted
October 25, 1897. Writ granted December 7, 1897.

*Boudeman & Adams,* for relator.

*Fred A. Maynard,* Attorney General (*Birney Hoyt,*
of counsel), for respondent.

MOORE, J. The relator was organized in 1858, under
the provisions of Act No. 39, Laws 1855. Its corporate
existence ended, under the laws as they then stood, in
1888. The attention of the corporation was not called
until recently to the fact that its corporate existence was
ended. Since its original organization expired, it has been
a corporation *de facto,* and has done business as though
its corporate existence had been properly and legally ex-
tended. When it learned the situation, it took such
action to extend its corporate existence as it deemed neces-
sary to comply with the provisions of section 10 of article
15 of the Constitution, and a legislative act passed in
1889, to be found in 3 How. Stat. § 4904c. The corpora-
tion was organized, not for the purpose of doing business
in the ordinary sense, but as an educational institution,
for the purpose of affording educational advantages to
young women. That has been its purpose always, and is
still the object of its existence. When it was originally

organized, it had property valued at $8,100, which was given to it by persons interested in the purpose of its organization. This amount has been increased by donations until the value of the property now invested is $65,000. The original articles of incorporation state that there has been subscribed to the capital stock of such association $8,100. Article 8 of the articles of reincorporation is as follows:

"The amount of property and money actually subscribed, donated, bequeathed, and devised to said corporation for its establishment, maintenance, and support, and which constitutes what is denominated its 'capital stock' (although, as a matter of fact, no stock has been issued to any one for any of said money or property, or intended to be, by the corporation organized as before stated, or by the persons furnishing said money and property, nor intended in the future to be so issued), is the sum of $65,000, all of which has been heretofore, from time to time, since the original organization of said corporation, voluntarily subscribed, donated, devised, and bequeathed to said corporation, and accumulated by it, and all of which has been paid in, and is now held and owned by said corporation."

The petition filed by the relator shows that the corporation was never formed as a stock company, and that no stock has ever been issued, and that now it is not known who the parties were that contributed to the original fund owned by the corporation; that the contributions were voluntary gifts, and nearly all of the original contributors are now dead. The petition and articles of extension also show that the corporation was not called into being, and not continued, for the purpose of earning a profit for any one, but for educational purposes solely. After the corporation had taken such action as it deemed necessary to extend its life, it applied to the respondent to file and record the articles of association extending the corporate existence of the relator. The respondent had doubts about his right to file and record these articles, and declined to do so. The relator, in this proceeding, asks for a *mandamus* to compel the respondent to file and record the articles of association.

Several reasons were assigned by the respondent for his refusal to comply with the request of the relator. Some of them relate to a doubt he entertained about the constitutionality of the legislation authorizing an extension of the corporate life, and of the regularity of the proceedings to extend the life, of the corporation. It is now conceded by the counsel for respondent that the only question that stands in the way of filing and recording the articles of association is the failure of the relator to pay to the respondent for the State a franchise fee of one-half of one mill on each dollar of the authorized capital stock of the corporation, as provided by Act No. 182, Pub. Acts 1891, as amended by Act No. 79, Pub. Acts 1893.

Does the franchise fee law apply to educational institutions? Subdivision 4, § 7, Act No. 206, Pub. Acts 1893, exempts the real estate belonging to educational institutions from taxation. Section 9, Act No. 25, Pub. Acts 1895, exempts the personal property of educational institutions from taxation. Act No. 46, § 3, Pub. Acts 1897, provides that the franchise fees received from corporations shall be applied in paying the interest upon the primary school, university, and other educational funds, etc. It has always been the policy of this State, as indicated by the provisions of its Constitution and a long line of legislative enactments, to encourage the cause of education. Liberal provision has been made for the purpose of establishing and sustaining schools. A reading of the provisions of the franchise fee law, in connection with the existing laws in relation to educational institutions, makes it very clear that it was no part of the purpose of the legislature, in providing for the payment of a franchise fee upon capital stock by corporations, to apply its provisions to educational institutions organized in the manner in which the relator was organized, and maintained for the purpose for which it is maintained.

The writ of mandamus will issue as prayed.

The other Justices concurred.